## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

JAMES DEVIN O'NEAL                                      CIVIL ACTION

VERSUS                                                  NO. 20-151-SDD-SDJ

U.S. DEPARTMENT OF EDUCATION, et al.

### NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U.S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on April 20, 2022.

　

　

_____
**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

JAMES DEVIN O'NEAL                                       CIVIL ACTION

VERSUS                                                            NO. 20-151-SDD-SDJ

U.S. DEPARTMENT OF EDUCATION, et al.

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on Plaintiff's Complaint. For the following reasons, the undersigned recommends Plaintiff's claims be dismissed with prejudice because Plaintiff lacks standing to proceed with his suit.

### I.    BACKGROUND

*Pro se* Plaintiff, James Devin O'Neal, instituted this action against the U.S. Department of Education ("USDOE") on March 13, 2020, alleging multiple violations of Plaintiff's constitutional rights by the USDOE.[1] At the time Plaintiff filed his Complaint, he also filed a motion to proceed *in forma pauperis*.[2] The Court, in response, held a hearing on September 30, 2020, pursuant to *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), to determine whether all or any part of Plaintiff's case should be dismissed as frivolous and/or for failure to state a claim.[3] At the hearing, Plaintiff was given 30 days to file an Amended Complaint.[4] Plaintiff filed his initial Amended Complaint

---

[1] R. Doc. 1 at 1-3. Plaintiff later amended his Complaint to add the United States as a Defendant.
[2] R. Doc. 2. The Court granted this Motion on November 16, 2020 (R. Doc. 18).
[3] R. Doc. 19. Pursuant to 28 U.S.C. § 1915(e)(2)(B), this Court is authorized to dismiss an action against a governmental entity or an officer or employee of a governmental entity if the Court is satisfied that the action or claim is frivolous, malicious, or fails to state a claim upon which relief may be granted. This statute is intended to afford the court the ability to separate those claims that may have merit from those that lack a basis in law or in fact. "Section 1915(e)(2)(B) applies equally to prisoner and non-prisoner *in forma pauperis* cases." *Sanchez v. Waguespack*, No. 09-6130, 2010 WL 1727836, at *2 (E.D. La. Mar. 31, 2010) (citing *Newsome v. EEOC*, 301 F.3d 227, 231-33 (5th Cir. 2002); *see also Patel v. United Airlines*, 620 F. App'x. 352 (5th Cir. 2015) (applying Section 1915(e)(2)(B) to non-prisoner *pro se* litigant); *Malone v. La. Dep't of Safety & Corrections*, No. 17-1025, 2017 WL 4106244, at *1 (W.D. La. Aug. 25, 2017) (court finding that, in accord with numerous cited authorities, "Section 1915(e)(2)(B) applies to non-prisoners and prisoners alike").
[4] *Id.*

2

on October 31, 2020 (R. Doc. 16), followed shortly thereafter by an Amended Complaint "Version II" filed on November 3, 2020 (R. Doc. 17).

## II.     LAW AND ANALYSIS

### A.     Operative Complaint

As stated above, Plaintiff filed an initial Amended Complaint, followed three days later by an Amended Complaint "Version II." The Court notes that Plaintiff's Amended Complaint "Version II" (R. Doc. 17) now serves as the operative pleading in this case. *See King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) ("An amended complaint supersedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading."); *McAdams v. Receivable Recovery Services, LLC*, No. 19-248, 2020 WL 1237011, at *1 (M.D. La. March 13, 2020) ("Generally, an amended complaint supersedes the original complaint and renders it of no legal effect."). As such, the Court will examine the claims set forth only in Plaintiff's Amended Complaint "Version II," referred to hereinafter as "Complaint." In addition, the Court will also consider Plaintiff's statements during his *Spears* hearing, as those statements are considered part of his pleadings. *See Hasty v. Johnson*, 103 F. App'x 816, 820 (5th Cir. 2004) (*Spears*-hearing transcript reviewed because plaintiff's statements at that hearing are considered part of his pleadings); *Cline v. Scott*, 39 F.3d 320 (5th Cir. 1994) (unpublished) (*Spears* hearing serves the purpose of fleshing out petitioner's claims and is in the nature of a motion for more definite statement); *Hodge v. B.B. Sixty Rayburn Corr. Center*, No. 08-3193, 2008 WL 4628586, at *1 (E.D. La. Oct. 16, 2008) (taking into account plaintiff's amended complaint and *Spears* hearing testimony in determining the claims being asserted).

B.     **Plaintiff Lacks Standing to Pursue His Claims**

Before the Court can turn to the merits of Plaintiff's case, it must first consider whether Plaintiff has standing to bring the claims set forth in his Complaint. As explained by the Fifth Circuit, "[s]tanding 'is an essential and unchanging part of the case-or-controversy requirement of Article III.'" *Ford v. NYLCare Health Plans of Gulf Coast, Inc.*, 301 F.3d 329, 332 (5th Cir. 2002) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). Where necessary, a district court may raise the issue of standing *sua sponte. Id.* (citing *SEC v. Forex Asset Mgmt., LLC*, 242 F.3d 325, 328 (5th Cir 2001)).

The federal standing doctrine has two components, Article III standing, which "addresses the Constitution's case and controversy requirement," and "prudential standing," which "embodies judicially self-imposed limits on the exercise of federal jurisdiction." *Benefit Recovery v. Wooley*, No. 03-652, 2006 WL 8450137, at *2 (M.D. La. Dec. 5, 2006) (citation omitted). With regard to Article III standing, as determined by the United States Supreme Court, "[a]n individual has a direct interest in objecting to laws that upset the constitutional balance between the National Government and the States when the enforcement of those laws causes injury that is concrete, particular, and redressable." *Bond v. U.S.*, 564 U.S. 211, 222, 131 S.Ct. 2355, 180 L.Ed.2d 269 (2011). The "irreducible constitutional minimum of standing," therefore, contains the following three elements: (1) an injury in fact, (2) a causal connection between the injury and the conduct complained of, and (3) that the injury likely will be redressed by a favorable decision. *Lujan*, 504 U.S. at 560-61. Failure to establish any one of them deprives the federal courts of jurisdiction to hear the case. *Ford*, 301 F.3d at 332. "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan*, 504 U.S. at 561 (citations omitted). "Article III standing is

4

a threshold issue" and must be considered before turning to prudential standing. *Cibolo Waste, Inc. v. City of San Antonio*, 718 F.3d 469, 473 (5th Cir. 2013) (citing *Ford*, 301 F.3d at 332).

Prudential standing "encompasses the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked." *Benefit Recovery*, 2006 WL 8450137, at *2 (internal quotations and citation omitted). "Under the prudential standing doctrine, the Supreme Court has held that, generally, a party 'must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Id.* (quoting *Kowalski v. Tesmer*, 543 U.S. 125, 129, 125 S.Ct. 564, 567, 160 L.Ed.2d 519 (2004)).

The Court firsts turns to whether Plaintiff has Article III standing—more specifically to whether Plaintiff has demonstrated an injury in fact. According to the Supreme Court, an injury in fact in the context of standing means an invasion of a legally-protected interest that is both concrete and particularized as well as actual or imminent, not conjectural or hypothetical. *Lujan*, 504 U.S. at 560 (citations omitted). Stated another way, "[a]llegations of injury that are merely conjectural or hypothetical do not suffice to confer standing." *Jindal v. U.S. Dep't of Educ.*, No. 14-534, 2015 WL 854132, at *4 (M.D. La. Feb. 26, 2015) (citing *Little v. KPMG, LLP*, 575 F.3d 533, 540 (5th Cir. 2009)).

Here, Plaintiff describes his alleged injury as follows:

> During the years of 2004-2015, my rights were violated while my son … attended the Zachary public school system in Zachary, LA because of the standards mandated by the U.S. Department of Education. Currently, my rights are still being violated because I cannot send my grandson (that I have custody of) to any public

schools due to the fact that the standards violate my conscience and religious beliefs.[5]

Plaintiff continues that "[t]o have compulsory education and not afford the parent the ability to view the curriculum or the standards (which is needed for them to make an educated and prudent decision) is, in effect, to remove the parent's God-given right and liberty to reject curriculum or standards that violate their conscience and/or religious tenets."[6] He further explains, "[b]ecause I was told that I had to send my kid to school on the penalty of a criminal offense, I was not informed that I had the right to reject curriculum, nor was I afforded the opportunity to view the standards nor the curriculum being taught to my child …"[7] Per Plaintiff, this allegedly mandatory, secular education "has caused irreparable damage to [his] son … as he now has a totally socialist mindset and worldview that [Plaintiff] did not espouse" and that had he "had the opportunity to know what was being taught to [his] son and have been informed that [he] had the right to reject the curriculum that aligns with the standards in place … [he] would have never allowed [his] son to be taught what he was in the Zachary public school system."[8] Plaintiff further disclosed during his *Spears* hearing that his grandson, of whom he has custody and who is of school age, no longer attends public school; Plaintiff's wife currently homeschools him.

Thus, with regard to specific injuries Plaintiff claims he suffered, it is within the context of an alleged "compulsory education," with Plaintiff claiming he "was told that [he] had to send [his] kid to school on the penalty of a criminal offense."[9] However, to the extent that Plaintiff challenges an alleged mandate by which he was forced to send his son and/or grandson to public school, no

---

[5] R. Doc. 17 at 4. While Plaintiff makes allegations about the education of both his son and his grandson, the Court notes that Plaintiff's son is now an adult and no longer attends school in the Zachary public school system. The Court does not know when Plaintiff's son's attendance there ended. *See id.* at 15.
[6] *Id.* at 10.
[7] *Id.* at 15.
[8] *Id.*
[9] *Id.*

6

such mandate exists. In his Complaint, Plaintiff identifies no federal (or state) statute or USDOE regulation that mandates a child attend public school—because none exists. In the 1925 Supreme Court case *Pierce v. Society of the Sisters of the Holy Names of Jesus & Mary*, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925), to which Plaintiff cites liberally in his Complaint, the Court examined the constitutionality of the 1922 Compulsory Education Act, an Oregon law that mandated every child between 8 and 16 years old be sent to a public school, with failure to do so being declared a misdemeanor. *Id.* at 530. Mirroring Plaintiff's arguments in the instant matter, the appellee in *Pierce* argued, *inter alia*, that "the enactment conflicts with the right of parents to choose schools where their children will receive appropriate mental and religious training" and that enforcement of said statute is unconstitutional. *Id.* at 532. According to the Supreme Court:

> The fundamental theory of liberty upon which all governments in this Union repose excludes any general power of the state to standardize its children by forcing them to accept instruction from public teachers only. The child is not the mere creature of the state; those who nurture him and direct his destiny have the right, coupled with the high duty, to recognize and prepare him for additional obligations.

*Id.* at 535. As such, the Supreme Court found "it entirely plain that the Act of 1922 unreasonably interferes with the liberty of parents and guardians to direct the upbringing and education of children under their control" and upheld a ruling prohibiting appellant from threatening or attempting to enforce the Oregon Compulsory Education Act. *Id.* at 534-35, 536. Thus, the holding in *Pierce* prohibits enactment of a statute mandating public education for all children. The ruling in *Pierce* also specifically preserves a parent or guardian's right and ability to send his or her child or ward to any type of non-public school, including private school or homeschool.[10] Thus, Plaintiff has myriad educational opportunities available to his grandson, which also were available to his son. And Plaintiff admittedly is taking advantage of them, currently

---

[10] In fact, the educational model Plaintiff touts in his Complaint, Classical Conversations, is, to the Court's knowledge, a Christian homeschooling curriculum.

7

homeschooling his grandson. The fact that the public education offered to Plaintiff does not comport with his religious beliefs, and to which he is in no way mandated to send his son or grandson, is not a concrete, particularized injury in fact.

In addition to these more specific allegations regarding the education of his son and grandson, Plaintiff also makes myriad general complaints regarding the entire public education system and its effect on all of "our children." These allegations cover a wide-array of perceived ills, none of which, however, pertain specifically to Plaintiff. For example, Plaintiff takes issue with federal influence over education by the states, stating "[w]e are being lied to, and the exact powers (that U.S. Const. amend. X was created to prevent the U.S. from exercising) are being exercised over our children and our nation through the influence of the U.S. federal government on education via standard we are being told to align with."[11] Additionally, Plaintiff claims that "globalist organizations" have impermissibly influenced the USDOE, arguing, "[t]he U.S. Department of Education has allowed a foreign-governing entity (United Nations Education, Scientific, and Cultural Organization; World Core Curriculum; and the Association for Supervision and Curriculum Development) to influence the curriculum of the public schools of America because they have influenced the curriculum and the standards of the higher public education and elementary public education in America!"[12] Plaintiff also complains of psychological profiling and data mining of students through standardized tests and use of school computers[13] and mask mandates and forehead-scanned temperature measurements to mitigate the spread of Covid-19.[14] However, these allegations are made in terms of "our children" and appear to pertain to all children currently in the public school systems across the country; Plaintiff,

---

[11] R. Doc. 17 at 7.
[12] *Id.* at 11-12.
[13] *Id.* at 13-14.
[14] *Id.* at 20.

8

therefore, does not allege a concrete and particularized injury that he has suffered, meaning he cannot establish that he has suffered an injury in fact.

Not only has Plaintiff has failed to allege a concrete and particularized injury, but he also has failed to allege one that was caused by Defendants and that is redressable by a favorable decision. Here, Plaintiff has severed all ties with public schools, having withdrawn his grandson from the Zachary public school system, an action Plaintiff does not claim he was not compelled to take by any governmental actor. Plaintiff, who complains specifically about the education offered by the Zachary public school system, has not named it as a defendant and does not seek redress from it for the alleged injuries he suffered through his experiences with it. Rather, the relief Plaintiff seeks "is to give parents of students equal access to the public facilities and the funds used to run them in order for them to have proper control over their children's education" which "will allow every parent to choose what type of education we will teach our children."[15] Thus, the relief sought is not targeted to the redress of an alleged injury specifically suffered by Plaintiff. Rather, Plaintiff here appears to seek a ruling which allows all parents nationwide access to federal education funds and access to public educational facilities that each can use in whatever way he or she sees fit. This is not sufficient to establish resdressability. *See Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962) (the gist of standing is whether a plaintiff has alleged such a personal stake in the outcome of the controversy as to assure "concrete adverseness"); *Apache Bend Apartments, Ltd. v. U.S. Through I.R.S.*, 987 F.2d 1174, 1179 (5th Cir. 1993) (because injury alleged by plaintiffs was shared by virtually all taxpayers, "the relief that they seek would benefit the same class in substantially equal measure," meaning plaintiffs "failed to demonstrate that the relief they seek would personally benefit them in a tangible way"); *Preskar v. U.S.*, 248 F.R.D.

---

[15] *Id.* at 21.

576, 582 (E.D. Cal. 2008) (finding plaintiffs failed to establish standing because "[t]he allegations in this respect are so vague that it is nearly impossible to discern the actual injury at stake, who caused it, and how a favorable decision would redress it"). As such, Plaintiff has failed to establish this element of Article III standing.

Even had Plaintiff been able to surmount the Article III standing hurdle, which the Court here reiterates he did not and cannot, Plaintiff cannot establish prudential standing to bring this suit either. The requirements for prudential standing require a court to consider "whether the alleged injury is more than a mere generalized grievance, whether the plaintiff is asserting [his] own rights or the rights of third parties, and whether the claim falls within the zone of interests to be protected or regulated by the constitutional guarantee in question." *Preskar,* 248 F.R.D. at 581 (quoting *Alaska Right to Life v. Feldman*, 504 F.3d 840, 848-49 (9th Cir. 2007)). "[T]he Supreme Court has made it clear that 'when the asserted harm is a "generalized grievance" shared in substantially equal measure by all or a large class of citizens, that harm alone normally does not warrant exercise of jurisdiction." *Apache Bend Apartments*, 987 F.2d at 1178 (quoting *Warth v. Seldin,* 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975)). "In the equal protection context," the prudential principle barring adjudication of "'generalized grievances' against allegedly illegal government conduct" means that "standing exists only for those persons who are personally denied equal treatment by the challenged discriminatory conduct." *Walker v. City of Mesquite*, 169 F.3d 973, 979 (5th Cir. 1999) (citing *U.S. v. Hays*, 51 U.S. 737, 742-43, 115 S.Ct. 2431, 2435, 132 L.Ed.2d 635 (1995)).

As discussed above, the allegations in Plaintiff's Complaint that are not based on a non-existent public education mandate are highly generalized, focusing, *inter alia*, on the alleged

10

influence of "globalist organizations" on the U.S. education system,[16] allegedly inappropriate secular teachings in the current public school curriculum,[17] and data mining of students' information through their use of school-provided computers.[18] Further, the detriment allegedly being suffered by these actions is not limited to Plaintiff's grandson; rather, it applies to all children in the public school system nationwide. The Court therefore finds that Plaintiff is impermissibly raising generalized grievances as well as the putative rights of third parties, both of which prohibit him from establishing prudential standing in this case. *See, e.g., Warth,* 422 U.S. at 504–07 (plaintiffs lacked standing based on allegations that an adjacent town's zoning ordinances effectively excluded low and moderate income persons from living in the town because they could not demonstrate that the ordinances specifically precluded them from living in the adjacent town); *Kumar v. Frisco Indep. Sch. Dist.*, 443 F.Supp.3d 771, 787-88 (E.D. Tex. 2020) (plaintiff voter lacks standing to represent the entire community of African Americans, Asians, Hispanics, or other minority groups).

Because Plaintiff has failed to show he has suffered an actual injury in fact, a required element of standing, this Court lacks jurisdiction to hear this case. *See Ford*, 301 F.3d at 332. *See also Lujan*, 504 U.S. at 563-65 (finding plaintiff lacked standing because its members could not demonstrate injury in fact caused by American development projects in other countries, which potentially threatened endangered species there, because they could not show how any such damage to the species would produce imminent injury to the members); *Kitty Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 458-59 (5th Cir. 2005) (because plaintiff could not demonstrate injury in fact, it lacked standing to challenge the Department of Labor's Administrative Review Board's

---

[16] *Id.* at 11-12.
[17] *Id.* at 8, 18-19.
[18] *Id.* at 13-14.

11

finding regarding statutory wage requirements for certain pilots because it could not show it would suffer any direct harm in the form of future lost profits or any indirect harms, which the court found were hypothetical and conjectural); *Preskar*, 248 F.R.D. at 582 (plaintiffs had no standing to sue the U.S., the State of California, and various federal and state education agencies and officials based on "diversity education" in public schools, finding they presented "generalized grievances" and "sweeping" allegations which "are inappropriate for adjudication in federal court"). The Court also finds that any amendments by Plaintiff to his Complaint would be futile. As public education is not compulsory, and, because of the entrenched separation of church and state,[19] Plaintiff has not suffered an injury redressable by this Court.

### III.   RECOMMENDATION

Because Plaintiff lacks standing to bring the claims in his Complaint,

**IT IS RECOMMENDED** that Plaintiff's claims be **DISMISSED WITH PREJUDICE** because Plaintiff lacks standing to proceed with them and because any further amendments by Plaintiff would be futile.

Signed in Baton Rouge, Louisiana, on April 20, 2022.

**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**

---

[19] The First and Fourteenth Amendments have established the separation of church and state. *See, e.g., People of State of Ill. ex rel. McCollum v. Board of Educ. of School Dist. No. 71, Champagne County, Ill.*, 333 U.S. 203, 212, 68 S.Ct. 461, 465, 92 L.Ed. 649 (1948) ("For the First Amendment rests upon the premise that both religion and government can best work to achieve their lofty aims if each is left free from the other within its respective sphere.").